UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

J&J SPORTS PRODUCTIONS, INC.,

Plaintiff,

v.

JUAN M. MORENO D\B\A EL CHAMIZAL, *et al.*,

Defendants.

Case No. 2:17-cv-00680-MMD-NJK

ORDER

**I. SUMMARY**

This case involves the alleged interception of a boxing match by the owners of a Mexican restaurant in Las Vegas, who allegedly allowed their patrons to watch the match on March 8, 2014—via televisions in the restaurant—without authorization. Pending before the Court are Plaintiff J&J Sports Productions, Inc.'s Motion for Summary Judgment ("MSJ") (ECF No. 42) and Motion to Dismiss ("MTD") (ECF No. 41). With respect to Plaintiff's MSJ, the Court has reviewed Defendants EL Chamizal, LLC; Juan M. Moreno; and Maria Luna Valle's (collectively, "Defendants") response (ECF No. 53), and Plaintiff's reply (ECF No. 56). With respect to Plaintiff's MTD, the Court has reviewed Defendants' response (ECF No. 52), and Plaintiff's reply (ECF No. 55). For the reasons explained below, Plaintiff's MSJ is denied without prejudice, and Plaintiff's MTD is granted. Accordingly, Defendants' counterclaims are dismissed without prejudice.

///

///

## II. BACKGROUND

Plaintiff purports to be the exclusive nationwide licensee of the television distribution rights to a boxing match between Saul Alvarez and Alfredo Angulo[1] that was telecast on March 8, 2014 (the "Fight"). (*See* ECF No. 42-1 at 2.) Defendants operate a Mexican restaurant called El Chamizal at 1054 North Rancho Drive, Las Vegas, Nevada 89106 (the "Restaurant"). (*See* ECF Nos. 1 at 2, 40 at 7.) Plaintiff alleges that Defendants allowed their patrons at the Restaurant to watch the Fight on televisions in the Restaurant. (*See* ECF No. 1 at 3-5.) Defendants admit that the Fight was shown at the Restaurant. (*See* ECF No. 42-2 at 14, 30.) Defendants also admit that they did not have a license from Plaintiff to show the Fight at the Restaurant. (*See id.* at 11-12, 27-28.)

Plaintiff filed suit against Defendants on March 7, 2017, asserting that Defendants showing of the Fight in the Restaurant violated Plaintiff's rights protected under 47 U.S.C. § 605 and 47 U.S.C. § 553.[2] (*See* ECF No. 1 at 5-8.) Plaintiff further alleged that it was the exclusive licensee of the television distribution rights to the Fight. (*See id.* at 5.) While Plaintiff did grant various sublicenses to show the Fight, it did not grant one to Defendants. (*See id.* at 5-6.) Given that Defendants admitted they showed the Fight at the Restaurant (*see* ECF No. 42-2 at 14, 30), and that Plaintiff argues Section 605 and Section 553 are strict liability statutes (*see* ECF No. 42 at 8), Plaintiff then moved for summary judgment as to both of its claims. (ECF No. 42.)

///

---

[1]The showing included the warm-up or 'undercard' fights. (*See* ECF No. 42-1 at 2-3.)

[2]47 U.S.C. § 605 ("Section 605") generally prohibits the unauthorized interception or reception of radio or satellite signals. *See, e.g.*, *DirecTV, Inc. v. Webb*, 545 F.3d 837, 843 (9th Cir. 2008). 47 U.S.C. § 553 ("Section 553") generally prohibits the unauthorized interception of cable television and was aimed at preventing the spread of unauthorized converters that allowed people to watch cable television without paying for it. *See, e.g., Cont'l Cablevision, Inc. v. Poll*, 124 F.3d 1044, 1046 n.2 (9th Cir. 1997).

Following an unsuccessful motion to dismiss,[3] Defendants filed an answer to Plaintiff's Complaint on December 11, 2017. (ECF No. 40.) In that answer, Defendants asserted two counterclaims against Plaintiff and Plaintiff's associates.[4] The two counterclaims are for abuse of process and civil conspiracy. (*See id.* at 15, 18.)

The allegations in the counterclaims are essentially that Plaintiff and its associates conspired to seek out Mexican and Filipino restaurants who were showing the Fight without a license to assert claims of violations of Section 605 and Section 553 against them. (*See id.* at 10-11.) This campaign allegedly had the ulterior motive to shut down the Restaurant "and other Mexican restaurants like [the Restaurant] nationwide." (*Id.* at 11-12.) With respect to the Restaurant specifically, Defendants allege that Plaintiff and its associates presented an unreasonably high initial settlement offer to Defendants upon identifying the alleged infringement of Plaintiff's rights, then filed a "sham complaint" against Defendants to avoid the applicable statute of limitations. (*See id.* at 11, 9.) Defendants further allege that the Fight was shown in the Restaurant because Defendants had a satellite dish that delivered the Fight through a Sky Azteca satellite feed broadcasting from Mexico City, Mexico. (*See id.* at 12.) They argue this undermines Plaintiff's claims here. (*See id.* at 12-15.) In addition, in their responses to Plaintiff's MSJ and MTD, Defendants cast doubt on the accuracy of the contents of the affidavit of Skye Campbell submitted in support of Plaintiff's MSJ (ECF No. 42-2 at 4-6), which Defendants appear to argue further buttresses their claims of abuse of process and civil conspiracy. (*See. e.g.*, ECF Nos. 52 at 6-9, 53 at 6-9.)

---

[3] Defendants filed a motion to dismiss (ECF No. 13) on April 20, 2017, which the Court denied on November 8, 2017 (ECF No. 33). Defendants then attempted to file a second motion to dismiss (ECF No. 45) on April 19, 2018, without seeking leave of Court and after the dispositive motion deadline previously set by the Court had passed. (*See* ECF No. 50.) The Court also denied Defendants' second motion to dismiss. (*See id.*)

[4] Defendants asserted their two counterclaims against Plaintiff; Plaintiff's counsel, Dubowsky Law Office, Chtd.; a firm retained either by Plaintiff or Plaintiff's counsel, Auditmasters; an individual investigator retained by Auditmasters to investigate the showing of the Fight at the Restaurant, Skye Idris Campbell; and the promoter of the Fight, Golden Boy Promotions, LLC (along with Doe and Roe defendants). (*See* ECF No. 40 at 8-9.) For convenience, the Court refers to these parties as Plaintiff's associates.

3

### III. MOTION FOR SUMMARY JUDGMENT (ECF NO. 42)

#### A. Legal Standard

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *See id.* at 250-51. "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (*quoting First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *See Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *See Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th

1  Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586
2  (1986)). "The mere existence of a scintilla of evidence in support of the plaintiff's position
3  will be insufficient." *Anderson*, 477 U.S. at 252.

   **B.   Discussion**

The Court denies Plaintiff's MSJ without prejudice. The Court's review of the materials Plaintiff submitted in support of its MSJ revealed a threshold issue, which, given the evidence currently before the Court, requires the Court to conclude that Plaintiff has not met its burden to show there are no genuine issues of material fact with respect to either its Section 605 or Section 553 claims. More specifically, both of Plaintiff's claims are predicated on Plaintiff's assertion that Plaintiff had the exclusive television distribution rights to show the Fight within a territory that included the location of the Restaurant. (*See* ECF No. 42 at 6, 9, 10 (asserting Plaintiff's exclusive rights).) Plaintiff attached a copy of the contract that purportedly gives Plaintiff its exclusive rights. (*See* ECF No. 42-1 at 8-13, 2 (stating that the contract at ECF No. 42-1 at 8-13 gives Plaintiff its exclusive rights).) That contract states that Plaintiff's exclusive rights are geographically limited. In pertinent part, it says that Plaintiff has exclusive rights to exhibit the Fight "only within the fifty states of the United States of America (excluding Puerto Rico), with the exception of Clark County Nevada which shall be 'blacked out' unless [Plaintiff] receives written authorization by Promoter to exhibit the [Fight] within Clark County." (ECF No. 42-1 at 8.) The Restaurant is located in Las Vegas (*see* ECF Nos. 1 at 2, 40 at 7), and Las Vegas is located in Clark County, Nevada.[5] Plaintiff has proffered no evidence that it obtained written authorization from the Fight's promoter to exhibit the Fight within Clark County, as required by the contract. (*See* ECF No. 42-1 at 8.) Therefore, Plaintiff has not presented evidence to show that Plaintiff had exclusive rights to show the Fight in the area encompassing the Restaurant.

---

[5]The Court takes judicial notice of the fact that Las Vegas is in Clark County, Nevada because it is generally known within this Court's territorial jurisdiction. *See, e.g.*, *Harris v. County of Orange*, 682 F.3d 1126, 1131-32 (9th Cir. 2012).

Without such evidence, Plaintiff's claims fail. The Court accordingly denies Plaintiff's MSJ without prejudice to later renewal if Plaintiff can locate supplemental evidence demonstrating that it had exclusive rights to show the Fight in Clark County, Nevada.[6]

## IV. MOTION TO DISMISS (ECF NO. 41)

### A. Legal Standard

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555.) "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (internal citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *See id.* at 678-79. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *See id.* at 678. Second,

---

[6]Because the Court denies Plaintiff's motion on this threshold issue, the Court does not address the arguments raised by the parties. The parties may raise those arguments again if Plaintiff files a renewed motion for summary judgement with additional evidence establishing its exclusive rights. That said, the Court denies Defendants' request to defer ruling on Plaintiff's MSJ until Defendants can further explore the accuracy of the contents of Skye Campbell's affidavit. (*See* ECF No. 53 at 23-24.) The accuracy of the contents of that affidavit goes to proof that the Fight was shown in the Restaurant. Given Defendants' admissions that the Fight was shown in the Restaurant (*see* ECF No. 42-2 at 14, 30), further discovery by Defendants regarding the affidavit appears to be futile.

6

a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *See id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *See id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not show[n]—that the pleader is entitled to relief." *See id.* at 679 (internal quotation marks omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *See Twombly*, 550 U.S. at 570.

A complaint must contain either direct or inferential allegations concerning "all the material elements necessary to sustain recovery under *some* viable legal theory." *Id.* at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989) (emphasis in original)).

**B. Discussion**

Plaintiff moved to dismiss Defendants' two counterclaims. (*See* ECF No. 41.) The Court addresses Plaintiff's arguments as to the two counterclaims in turn, below.

**1. Abuse of Process**

"Abuse of process is a tort recognized to provide a remedy for cases in which legal procedure has been set in motion in proper form, with probable cause, but nevertheless has been perverted to accomplish an ulterior purpose for which it was not designed." *Rashidi v. Albright*, 818 F. Supp. 1354, 1358 (D. Nev. 1993) (citing Prosser & Keaton, *Law of Torts* 896 (1984)). To successfully allege a tort claim for abuse of process under Nevada law, a plaintiff must establish two elements: (1) the defendant had an ulterior purpose in the underlying lawsuit other than resolving a legal dispute, and (2) the defendant willfully and improperly used the legal process to accomplish that purpose. *See LaMantia v. Redisi*, 38 P.3d 877, 880 (Nev. 2002). However, the mere filing of a complaint with malicious intent is insufficient to state an abuse of process claim; there must also be some subsequent act to filing which abuses the process. *See*

*Laxalt v. McClatchy*, 622 F. Supp. 737, 752 (D. Nev. 1985). Further, an act that carries out the legal process to its authorized conclusion is not an improper act—even if the defendant had bad intentions. For example, in *Rashidi*, the court found that maintaining a lawsuit for the ulterior purpose of continuing litigation as a lever to obtain a settlement did not demonstrate any ulterior purpose other than resolution or settlement of the suit, which was an acceptable use of process. *See* 818 F. Supp. at 1359.

Assuming that Plaintiff can produce evidence supporting its assertion that it had exclusive rights to show the Fight in an area encompassing the Restaurant, there is no abuse of process here. At this time, Defendants have not stated a claim for abuse of process because their allegations are essentially that Plaintiff identified alleged infringement of its rights, made a high initial settlement offer, filed a lawsuit, and refused to drop that lawsuit when Defendants asked. (*See generally* ECF No. 40 at 9-12.) These allegations cannot support an abuse of process claim if Plaintiff has the rights it purports to have.

All of Plaintiff's actions up to this point in this litigation are consistent with a reasonable litigation strategy employed to enforce Plaintiff's purported rights. None of these actions tend to show an impermissible ulterior purpose; to the contrary, they appear to be intended to resolve or settle this suit. *See, e.g.*, *Lagos v. Monster Painting, Inc.*, Case No. 2:11-cv-00331-LRH, 2012 WL 2415417, at *3 (D. Nev. June 26, 2012) (granting motion to dismiss abuse of process claims where "Defendants have not shown that Plaintiffs have a motive in maintaining their claims other than to resolve a legal dispute."). Further, to the extent Defendants argue Plaintiff abused legal process by presenting a high initial settlement offer, that settlement offer appears to be supported by the statutory damages available in Section 605 cases. *See* 47 U.S.C. § 605(e)(3)(C) (allowing an aggrieved party to elect to recover statutory damages of between $1000 and $10,000 per violation). Filing a complaint is not an abuse of process. *See Laxalt*, 622 F. Supp. at 752. And maintaining a lawsuit to extract a settlement is not an abuse of process. *See Rashidi*, 818 F. Supp. at 1359; *see also Hampton v. Nustar Mgmt. Fin.*

*Grp.*, Case No. 2:05-cv-0824-BES-GWF, 2007 WL 119146, at *3 (D. Nev. Jan. 10, 2007) (dismissing abuse of process claim based on party's failure to voluntarily dismiss a claim despite that party's knowledge that its claim was baseless). In addition, the strict liability nature of the statutes at issue here makes it arguably easy for Plaintiff to establish that Defendants infringed. *See J & J Sports Prods., Inc. v. Delgado*, No. 2:10-cv-2517 WBS, 2012 WL 371630, at *3 (E.D. Cal. Feb. 3, 2012) ("Both § 553 and § 605 are strict liability statutes."). Some of Defendants' abuse of process allegations appear to emanate from frustration with this relatively minimal required showing. (*See, e.g.*, ECF No. 40 at 11-14.) To the extent Defendants take issue with the strict liability nature of the applicable statutes, their issue is with Congress, not Plaintiff.

Therefore, the Court will grant Plaintiff's MTD as to the abuse of process claim. However, this dismissal is without prejudice to Defendants renewing their counterclaims if Plaintiff is unable to produce evidence of its exclusive rights as applicable here.

### 2. Civil Conspiracy

To state a valid claim for civil conspiracy, a plaintiff must show: (1) defendants, by acting in concert, intended to accomplish an unlawful objective for the purpose of harming the plaintiff; and (2) the plaintiff sustained damages as a result. *See Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 862 P.2d 1207, 1210 (Nev. 1993) (citations omitted). "A civil conspiracy claim operates to extend, beyond the active wrongdoer, liability in tort to actors who have merely assisted, encouraged or planned the wrongdoer's acts." *Flowers v. Carville*, 266 F. Supp. 2d 1245, 1249 (D. Nev. 2003) (quoting 16 Am. Jur. 2D Conspiracy § 57 (1998)). "While the essence of the crime of conspiracy is the agreement, the essence of civil conspiracy is damages." *Id*. "The damages result from the tort underlying the conspiracy." *Id*. Indeed, "[c]ivil conspiracy requires the existence of an underlying tort." *Markey v. Bank of Am.*, *N.A*, No. 2:12-cv-00027-LDG, 2012 WL 3317789, at *3 (D. Nev. Aug. 10, 2012) (citing *Flowers*, 266 F. Supp 2d at 1249).

Here, Defendants' failure to state an actionable claim for abuse of process—at least at this point in time—is also fatal to Defendants' civil conspiracy claim because the civil conspiracy claim lacks the requisite underlying tort. *See Markey*, 2012 WL 3317789, at *3 (dismissing civil conspiracy claim on motion to dismiss in part because plaintiff had not stated a claim for an underlying tort); *see also Vested Hous. Grp., LLC v. Principal Real Estate Inv'rs, LLC*, 648 F. App'x 646, 649 (9th Cir. 2016); *Lagos*, 2012 WL 2415417, at *3. Therefore, Plaintiff's MTD is also granted with respect to Defendants' conspiracy claim.

## V. STANDING

Plaintiff's apparent lack of exclusive rights with respect to the Fight being shown in the Restaurant also raises a standing issue, which the Court addresses *sua sponte*. "[S]tanding is an essential and unchanging part of the case or controversy requirement of Article III." *D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1035 (9th Cir. 2008) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). For that reason, both the Supreme Court and the Ninth Circuit have held that whether or not the parties raise the issue, "[f]ederal courts are required *sua sponte* to examine jurisdictional issues such as standing." *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 868 (9th Cir. 2002) (internal citation omitted); *see also United States v. Hays*, 515 U.S. 737, 742 (1995). The district court thus has "both the power and the duty to raise the adequacy of [a plaintiff's] standing *sua sponte*." *Bernhardt*, 279 F.3d at 868; *see also* Fed. R. Civ. Pro. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Plaintiff argues that only a "person aggrieved" has standing to bring a lawsuit under Section 605 and Section 553, and that Plaintiff is a "person aggrieved" because it "had the exclusive nationwide distribution rights to the" Fight. (ECF No. 42 at 9.) However, as noted above, Plaintiff's proffered evidence contradicts its statement that it had exclusive nationwide distribution rights to the Fight—which is particularly relevant here because the Restaurant is in Clark County. Thus, Plaintiff may not have standing to

prosecute this lawsuit absent additional evidence establishing Plaintiff's exclusive rights in Clark County, Nevada. For these reasons, Plaintiff will be directed to show cause as to why this action should not be dismissed for lack of subject matter jurisdiction.

## VI. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of Plaintiff's motions.

Accordingly, it is hereby ordered that Plaintiff's Motion for Summary Judgment (ECF No. 42) is denied without prejudice.

It is further ordered that Plaintiff's Motion to Dismiss (ECF No. 41) is granted.

It is further ordered that Defendants' counterclaims asserted in Defendants' Answer (ECF No. 40) are dismissed without prejudice.

It is further ordered that, within fifteen (15) days from the entry of this order, Plaintiff must show cause in writing why this case should not be dismissed for lack of subject matter jurisdiction. Defendants may file a response pursuant to Local Rule 7-2. If Plaintiff fails to show cause in writing within fifteen (15) days from the entry of this order, the Court will dismiss this case with prejudice.

DATED THIS 20th day of September 2018.

MIRANDA M. DU  
UNITED STATES DISTRICT JUDGE